**STATE of Minnesota, Respondent,**

v.

**Francisco GARCIA, Appellant.**

**No. A03–483.**

Court of Appeals of Minnesota.

Oct. 21, 2003.

John M. Stuart, State Public Defender, Benjamin J. Butler, Assistant State Public Defender, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Lisa N. Borgen, Clay County Attorney, Scott G. Collins, Assistant County Attorney, Moorhead, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge, HARTEN, Judge, and G. BARRY ANDERSON, Judge.

## OPINION

HARTEN, Judge.

Appellant, then a juvenile, received a stayed 58–month adult sentence after being designated an Extended Jurisdiction Juvenile (EJJ). After he twice violated probation, the district court executed his adult sentence and refused to give him credit for juvenile custody time spent at the Minnesota Correctional Facility in Red Wing (MCF–Red Wing). Appellant challenges that refusal. We affirm.

### FACTS

On 11 June 1999, appellant Francisco Garcia, then 14, was involved in an armed robbery. He was charged with first-degree aggravated robbery and attempted simple robbery. The district court designated appellant EJJ. He pleaded guilty to the first-degree aggravated robbery charge, and the attempted simple robbery charge was dismissed. Appellant was adjudicated delinquent, received a stayed adult sentence of 58 months, and was placed on supervised juvenile probation.

In August 2000, appellant successfully completed a program at the Northwest Minnesota Juvenile Center, as required by the terms of his probation, and returned to his home. Appellant returned to court on a probation violation after being arrested on 12 September 2000 for felony possession of stolen property, felony theft, and obstructing legal process. On 13 October 2000, the district court found that appellant violated probation and ordered him to complete a juvenile corrections program at MCF–Red Wing.

Appellant completed the residential portion of the treatment program in Septem-

ber 2001 and was released to a foster home placement. On 13 March 2002, appellant absconded from his foster home. He was arrested on 7 September 2002, certified as an adult, and charged with second-degree assault. After appellant admitted absconding, the district court again found that he violated his probation and continued the matter until his pending adult charge had been resolved. On 5 March 2003, the district court revoked appellant's EJJ status and executed his stayed 58–month adult sentence. Appellant's counsel requested that appellant be given credit for any time he had served in custody status. The district court granted jail credit for time spent in custody from and after 7 September 2002, when he was arrested, but denied credit for time appellant served at MCF–Red Wing; the court found that EJJ statutory provisions disallow credit for earlier confinements within the juvenile system. This appeal followed.

### ISSUE

Does Minn.Stat. § 260B.130, subd. 5 (2002), require jail credit to be given for time served in juvenile custody resulting from a probation violation committed after 1 August 2000?

### ANALYSIS

■ When evaluating constitutional challenges, statutory interpretation is a question of law this court reviews de novo. *State v. Grillo,* 661 N.W.2d 641, 644 (Minn. App.2003), *review denied* (Minn. 5 Aug. 2003). Statutes are presumed constitutional and will be declared unconstitutional with extreme caution and only when absolutely necessary. *State v. Larsen,* 650 N.W.2d 144, 147 (Minn.2002).

A defendant has the burden of establishing that he is entitled to jail credit for a specific period of time. *State v. Willis,* 376 N.W.2d 427, 428 n. 1 (Minn.1985). Grant-

ing jail credit is not discretionary with the trial court. *State v. Parr,* 414 N.W.2d 776, 778 (Minn.App.1987), *review denied* (Minn. 15 Jan. 1988). "Awards of jail credit are governed by principles of fairness and equity and must be determined on a case-by-case basis." *State v. Arend,* 648 N.W.2d 746, 748 (Minn.App.2002) (quotation omitted).

Minn.Stat. § 260B.130, subd. 5 (2002) was amended in 2000 by adding the following words, "no credit shall be given for time served in juvenile facility custody (sic) prior to a summary hearing." 2000 Minn. Laws ch. 255, § 1. Appellant argues that, because his initial offense took place in 1999 and the effective date of the amendment was 1 August 2000, the application of amendment to him would be *ex post facto,* and denying his jail credit under the amendment would violate the constitutional prohibition of *ex post facto* laws.

Both the United States and Minnesota Constitutions proscribe *ex post facto* laws. U.S. Const. art. I., § 9, cl. 3; Minn. Const. art. I, § 11. An *ex post facto* law is retrospective, i.e., it applies to events that occurred before its enactment and it disadvantages an offender affected by its application. *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981).

"The critical question is whether the law changes the legal consequences of acts completed before its effective date." *Weaver,* 450 U.S. at 31, 101 S.Ct. at 965. Prior to the amendment's effective date (1 August 2000), appellant had served no time at MCF–Red Wing. When enacted, the amendment merely exposed appellant to possible additional punishment in the event of a future probation violation. *See Grillo,* 661 N.W.2d at 644 (no *ex post facto* violation where reclassification of a prior offense as a "crime of violence" results in an enhanced punishment for a subsequent

offense); *see also State v. B.Y.*, 659 N.W.2d 763, 770–71 (Minn.2003) (relevant mitigating factors to consider when determining probation violation disposition are those relating to the violation, not the original offense). Appellant was ordered to complete the program at MCF–Red Wing as a result of his first probation violation, which occurred on 12 September 2000, *after* the amendment's effective date of 1 August 2000. Where a statute's punitive provision applies only to acts committed after the statute becomes effective, it is not retroactive and does not violate the *ex post facto* clause. *See State v. Dumas*, 587 N.W.2d 299, 304 (Minn.App.1998) (*ex post facto* law applies to events occurring before its enactment), *review denied* (Minn. 24 Feb. 1999). Therefore, the amendment, as applied to appellant, is not unconstitutional as being *ex post facto.*

 Apart from the *ex post facto* issue, appellant asserts that he is entitled to jail credit for "all time spent in custody in connection with the offense or behavioral incident for which sentence is imposed." Minn. R.Crim. P. 27.03, subd. 4(B). Citing Minn. R. Juv. P. 18.06, subd. 1(D), appellant claims that juveniles who are sentenced as adults are entitled to credit for all time spent in custody in connection with the offense. But the plain language of Minn.Stat. § 260B.130, subd. 5 (2002) states otherwise for EJJ prosecutions. The purpose of EJJ adjudication is to encourage changes in juvenile behavior by establishing a real and ongoing sanction of adult incarceration if the juvenile misbehaves while within the juvenile corrections system. *See In re Welfare of S.J.G.*, 547 N.W.2d 456, 461 (Minn.App.1996) (Randall, J. dissenting) (citing Minnesota Supreme Court Advisory Task Force on the Juvenile Justice System, Final Report, p. 33 (1994)), *review denied* (Minn. 6 Aug. 1996). Allowing EJJ juveniles credit toward adult incarceration while still within the juvenile system would erode the accountability fundamental to the EJJ purpose.

Appellant also relies on *Asfaha v. State*, 665 N.W.2d 523 (Minn.2003), and *State v. Bradley*, 629 N.W.2d 462 (Minn.App.2001), *review denied* (Minn. 15 Aug. 2001). Both are distinguishable. *Asfaha* addressed jail credit for juveniles who are certified as adults and did not pertain to juveniles designated EJJ. *Asfaha*, 665 N.W.2d at 527. *Bradley* addressed jail credit for time spent in a treatment facility and did not pertain to time spent in a correctional facility. *Bradley*, 629 N.W.2d at 467–68.

## DECISION

Because the probation violation that led to appellant's time served at MCF–Red Wing occurred after 1 August 2000, the district court properly applied Minn.Stat. § 260B.130, subd. 5 (2002) and refused to grant him jail credit.

**Affirmed.**